

ATTORNEYS AT LAW

Chrysler Building
405 Lexington Avenue | 36th Floor
New York, New York 10174-0002
212.785.2577 | fax 212.785.5203
www.carltonfields.com

Atlanta
Hartford
Los Angeles
Miami
**New York**
Orlando
Tallahassee
Tampa
Washington, DC
West Palm Beach

April 27, 2016

**VIA ECF AND ELECTRONIC MAIL**

The Honorable Valerie E. Caproni
Unites States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    **Case 1:16-cv-00655-VEC *Continental Ins. Co. v. Fairmont Premier Ins. Co. F/K/A Transamerica Premier Ins. Co.***

Dear Judge Caproni:

    In accordance with Your Honor's Order of April 21, 2016, we write on behalf of Petitioner Continental Insurance Company ("CIC") and Respondent TIG Insurance Company ("TIG") to provide this joint submission explaining why continued sealing of the Final Award is appropriate in light of the presumption of access discussed by the Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

    As Your Honor knows, CIC previously submitted a Motion to Seal and Memorandum of Law in Support of the Motion to Seal requesting that the Final Award be placed under seal (Dkt. 1).[1] Judge Stein granted CIC's Motion (Dkt. 7). The parties are in agreement that sealing the Final Award is appropriate and necessary in this case, and should remain as such.

### Relevant Facts/Background

    The facts relating to the underlying arbitration are set forth in CIC's Memorandum of Law in Support of its Petition to Confirm Arbitral Final Award and Memorandum of Law in Support of the Motion to Seal (Dkt. 1). Because the Court has already confirmed the Final Award, for purposes of brevity, the following discussion is limited to the facts relevant to the issue of sealing the Final Award and why it should remain confidential.

---

[1] To the extent CIC's Motion to Seal is not available to the Court, please advise so the parties may provide the Court with those documents.

At the outset of the underlying arbitration, the parties and the arbitration panel agreed that the arbitration would be confidential, and both the parties and the arbitration panel executed a Confidentiality Agreement.  A copy of the Confidentiality Agreement is attached as Exhibit 1 to CIC's Motion to Seal (Dkt. 1).  The Confidentiality Agreement continues to be in effect.  *Id.* at ¶ 2.

Pursuant to the Confidentiality Agreement, the parties agreed to keep confidential certain "Arbitration Information", including any final award issued by the panel:

> CIC and TIG agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, <u>final award</u> and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information" <u>will be kept confidential</u>. . . .

*Id.* (emphasis added).  While the Arbitration Information, including the Final Award, may be disclosed in connection with court proceedings, Paragraph 3 of the Confidentiality Agreement mandates that the parties submit any such information under seal.  *Id.* at ¶ 3.

The Confidentiality Agreement further recognizes the importance of keeping the Arbitration Information confidential and provides as follows:

> The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement.  Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

*Id.* at ¶ 6.

The Confidentiality Agreement is based on the standard form used in the reinsurance industry to maintain the confidentiality of arbitrations which can be found on the webpage for the U.S. division of the Association Internationale de Droit des Assurances (AIDA) Reinsurance and Insurance Society ("ARIAS-US"), a not for profit corporation that promotes the improvement of the insurance and reinsurance arbitration process.  *See* ARIAS-U.S. Sample Form 3.3.: Confidentiality Agreement, http://www.arias-us.org/forms/confidentiality_agreement.rtf, attached hereto as Exhibit 1.  The Confidentiality Agreement is also consistent with Section 3.8 of the ARIAS-U.S. Practical Guide to Reinsurance Arbitration Procedure and Section 7 of the Procedures for the Resolution of U.S. Insurance and Reinsurance Disputes.  *See* Exhibits 2 and 3 to CIC's Motion to Seal (Dkt. 1).

TIG did not object to the confirmation of the Final Award and has satisfied its payment obligations under the Final Award.

2

## Legal Argument

Although there is a common law right of public access to judicial documents, that right is not absolute. *See Lugosch*, 435 F.3d at 119-120. In *Lugosch*, the Second Circuit articulated a three-step "balancing" test for determining whether documents should be placed under seal. First, the court must determine whether the documents are judicial documents such that the presumption of access attaches. *Id.* Second, once the court determines that the item to be sealed is a judicial document, the court must then "determine the weight" of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts [i.e., the public]." *Id.* (citation omitted). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (citation omitted). "Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it." *Id.* at 120 (internal quotation omitted). "Such countervailing factors include . . . the privacy of those resisting disclosure." *Id.* (internal quotation omitted).

The presumption of public access is not applicable here. Indeed, the Final Award arose from a private arbitration between the parties, which is subject to the Confidentiality Agreement. The parties have a countervailing interest in maintaining the confidentiality of the Final Award, and expressly agreed that all "Arbitration Information", including the Final Award, be kept confidential and that "<u>all submissions of Arbitration Information to a court be sealed</u>." CIC's Motion to Seal (Dkt. 1), Exhibit 1, ¶¶ 2 and 3 (emphasis added).

Further, the Final Award is of minimal or no interest to the public. It does not concern public health or safety, nor does it involve a public entity or official. The public will not be prejudiced by maintaining the Final Award under seal. Conversely, the parties' interests in maintaining the confidentiality of the Final Award are sufficiently "higher values" that trump any public interest in accessing the documents. *Lugosch*, 435 F.3d at 120 (citation omitted) ("[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

Private, confidential arbitration proceedings are common in the reinsurance industry, and are encouraged by industry organizations and participants. *See* CIC's Motion to Seal (Dkt. 1), Ex. 2 at § 3.8, Comment C ("It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement.") and Ex. 3 at §§ 7.1, 7.2 ("All meetings and hearings of the Panel are private and confidential to the Parties.... The Panel and the Parties shall use their best efforts to maintain the confidential nature of the arbitration proceedings and the Award...."). The confidentiality aspect allows parties to air their differences without scrutiny from industry competitors and promotes the unfettered exchange of views. Undoing the parties' and the arbitration panel's agreement to keep the Final Award confidential by not sealing it would undermine the arbitration process in the reinsurance industry. Thus, preserving confidentiality under these circumstances is a sound objective. *See, e.g., Century Indem. Co. v. Certain Underwriters at Lloyds*, 592 F. Supp. 2d 825, 828 (E.D. Pa. 2009) (granting a motion to seal a reinsurance arbitration award subject to the same Confidentiality Agreement at issue here, on

3

account of the privacy interest of the parties and minimal public interest in the award itself, the Court noted "the purpose behind sealing the Award is legitimate. The parties entered into a Confidentiality Agreement and it is the practice in the reinsurance industry to keep arbitration proceedings, including final awards, confidential"). *See also Century Indem. Co. v. Global Reins. Corp. of Am., U.S. Branch*, No. 15 Civ. 6426 (LTS) (S.D.N.Y.) (sealing of final award in reinsurance arbitration and portions of the Petition to Confirm Award by Judge Failla by Order dated August 14, 2015 and maintained by Judge Swain by Order dated December 10, 2015 "in light of the confidentiality provisions of the arbitration agreement and consent to confirmation of the award").

      In addition, the Final Award was confirmed pursuant to Section 9 of the Federal Arbitration Act (the "FAA"). Under the FAA, a reviewing court "must grant such an order [to confirm] unless the award is vacated, modified, or corrected" pursuant to specific grounds. 9 U.S.C. § 9. Here, TIG did not oppose confirmation of the Final Award, and has already satisfied its payment obligations pursuant to it. Thus, there was no actual dispute regarding the uncontested Petition to Confirm before the Court, and the Court's confirmation was a ministerial act. *See Dallas MTA, LP v. Celltex Cellular,* No. 06 Civ. 15412 (RLC), 2010 U.S. Dist. LEXIS 23187, *3 (S.D.N.Y. Mar. 10, 2010); *Sevenson Envtl. Serv. Inc. v. Sapp Battery Site Group*, No. 04 Civ. 0670 (JFK), 2004 U.S. Dist. LEXIS 7573, *5 (S.D.N.Y. Apr 29, 2004). Given that the substance of the Final Award, i.e., its contents, was not subject to judicial review nor was it relied on by the Court in confirming it, this case does not implicate the public's right to access to documents underpinning adjudications of substantive rights. *Lugosch*, 435 F.3d at 119-20; *see also Century v. Global, supra* (noting consent to confirmation); *Nationwide Mut. Ins. Co. v. Continental Cas. Co.*, slip op., No. 14C844 (N.D. Ill., June 3, 2014) (attached hereto as Exhibit 2). The *Nationwide* court analyzed why, in circumstances like we have here, sealing is appropriate:

> What is peculiar about this case is that there is no dispute over petitioners' entitlement to the relief they seek ... No one opposes confirmation. Under these circumstances, confirmation of the award does not require me to consider, analyze, or adjudicate any of the parties' underlying rights or obligations. . . . All that matters at this juncture is that the award is unchallenged and has been fully satisfied. Indeed, this action is 'federal litigation' in name only; the petition does not articulate any substantive dispute. . . . [B]ecause resolution of these proceedings is not informed or influenced by the substance of the arbitration order, much less by any information the parties were obliged by agreement to keep confidential, no public interest is compromised by omission of that information from the public record.

*Id.* at 2-3.

      In short, continuing to seal the Final Award will fulfill the expectation of confidentiality agreed upon by the parties and the arbitration panel, as reflected in the Confidentiality Agreement. The importance of fulfilling this expectation outweighs the public interest in the Final Award, which is essentially non-existent. This is even more so here, where there was no dispute as to confirmation of the Final Award. Because of the restrictions in the Confidentiality Agreement which are standard in the reinsurance industry, and the fact that the Final Award has

already been confirmed, the parties respectfully request that the confidentiality of the Final Award be maintained pursuant to Judge Stein's Order.

Respectfully submitted,

*Jeanne M. Kohler*
Jeanne M. Kohler

cc: Jay Shapiro, counsel for Petitioner
    Daryn Rush, counsel for Petitioner