**CARLTON FIELDS**

**MEMO ENDORSED**

ATTORNEYS AT LAW

Chrysler Building
405 Lexington Avenue | 36th Floor
New York, New York 10174-0002
212.785.2577 | fax 212.785.5203
www.carltonfields.com

Atlanta
Hartford
Los Angeles
Miami
**New York**
Orlando
Tallahassee
Tampa
Washington, DC
West Palm Beach

Request GRANTED.
SO ORDERED.

*Valerie Caproni* (signature)

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE
May 9, 2016

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/9/2016

April 27, 2016

### VIA ECF AND ELECTRONIC MAIL

The Honorable Valerie E. Caproni
Unites States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   **Case 1:16-cv-00655-VEC** *Continental Ins. Co. v. Fairmont Premier Ins. Co. F/K/A Transamerica Premier Ins. Co.*

Dear Judge Caproni:

In accordance with Your Honor's Order of April 21, 2016, we write on behalf of Petitioner Continental Insurance Company ("CIC") and Respondent TIG Insurance Company ("TIG") to provide this joint submission explaining why continued sealing of the Final Award is appropriate in light of the presumption of access discussed by the Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

As Your Honor knows, CIC previously submitted a Motion to Seal and Memorandum of Law in Support of the Motion to Seal requesting that the Final Award be placed under seal (Dkt. 1).[1]  Judge Stein granted CIC's Motion (Dkt. 7).  The parties are in agreement that sealing the Final Award is appropriate and necessary in this case, and should remain as such.

### Relevant Facts/Background

The facts relating to the underlying arbitration are set forth in CIC's Memorandum of Law in Support of its Petition to Confirm Arbitral Final Award and Memorandum of Law in Support of the Motion to Seal (Dkt. 1).  Because the Court has already confirmed the Final Award, for purposes of brevity, the following discussion is limited to the facts relevant to the issue of sealing the Final Award and why it should remain confidential.

---

[1] To the extent CIC's Motion to Seal is not available to the Court, please advise so the parties may provide the Court with those documents.

Carlton Fields Jorden Burt, P.A.
A Professional Corporation
Carlton Fields Jorden Burt, P.A. practices law in California through Carlton Fields Jorden Burt, LLP.

At the outset of the underlying arbitration, the parties and the arbitration panel agreed that the arbitration would be confidential, and both the parties and the arbitration panel executed a Confidentiality Agreement. A copy of the Confidentiality Agreement is attached as Exhibit 1 to CIC's Motion to Seal (Dkt. 1). The Confidentiality Agreement continues to be in effect. *Id.* at ¶ 2.

Pursuant to the Confidentiality Agreement, the parties agreed to keep confidential certain "Arbitration Information", including any final award issued by the panel:

> CIC and TIG agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, <u>final award</u> and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information" <u>will be kept confidential</u>. . . .

*Id.* (emphasis added). While the Arbitration Information, including the Final Award, may be disclosed in connection with court proceedings, Paragraph 3 of the Confidentiality Agreement mandates that the parties submit any such information under seal. *Id.* at ¶ 3.

The Confidentiality Agreement further recognizes the importance of keeping the Arbitration Information confidential and provides as follows:

> The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

*Id.* at ¶ 6.

The Confidentiality Agreement is based on the standard form used in the reinsurance industry to maintain the confidentiality of arbitrations which can be found on the webpage for the U.S. division of the Association Internationale de Droit des Assurances (AIDA) Reinsurance and Insurance Society ("ARIAS-US"), a not for profit corporation that promotes the improvement of the insurance and reinsurance arbitration process. *See* ARIAS-U.S. Sample Form 3.3.: Confidentiality Agreement, http://www.arias-us.org/forms/confidentiality_agreement.rtf, attached hereto as Exhibit 1. The Confidentiality Agreement is also consistent with Section 3.8 of the ARIAS-U.S. Practical Guide to Reinsurance Arbitration Procedure and Section 7 of the Procedures for the Resolution of U.S. Insurance and Reinsurance Disputes. *See* Exhibits 2 and 3 to CIC's Motion to Seal (Dkt. 1).

TIG did not object to the confirmation of the Final Award and has satisfied its payment obligations under the Final Award.

2

Case 1:16-cv-00655-VEC Document 16 Filed 04/29/16 Page 3 of 5

## Legal Argument

Although there is a common law right of public access to judicial documents, that right is not absolute. *See Lugosch,* 435 F.3d at 119-120. In *Lugosch,* the Second Circuit articulated a three-step "balancing" test for determining whether documents should be placed under seal. First, the court must determine whether the documents are judicial documents such that the presumption of access attaches. *Id.* Second, once the court determines that the item to be sealed is a judicial document, the court must then "determine the weight" of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts [i.e., the public]." *Id.* (citation omitted). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (citation omitted). "Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it." *Id.* at 120 (internal quotation omitted). "Such countervailing factors include . . . the privacy of those resisting disclosure." *Id.* (internal quotation omitted).

The presumption of public access is not applicable here. Indeed, the Final Award arose from a private arbitration between the parties, which is subject to the Confidentiality Agreement. The parties have a countervailing interest in maintaining the confidentiality of the Final Award, and expressly agreed that all "Arbitration Information", including the Final Award, be kept confidential and that "all submissions of Arbitration Information to a court be sealed." CIC's Motion to Seal (Dkt. 1), Exhibit 1, ¶¶ 2 and 3 (emphasis added).

Further, the Final Award is of minimal or no interest to the public. It does not concern public health or safety, nor does it involve a public entity or official. The public will not be prejudiced by maintaining the Final Award under seal. Conversely, the parties' interests in maintaining the confidentiality of the Final Award are sufficiently "higher values" that trump any public interest in accessing the documents. *Lugosch,* 435 F.3d at 120 (citation omitted) ("[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

Private, confidential arbitration proceedings are common in the reinsurance industry, and are encouraged by industry organizations and participants. *See* CIC's Motion to Seal (Dkt. 1), Ex. 2 at § 3.8, Comment C ("It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement.") and Ex. 3 at §§ 7.1, 7.2 ("All meetings and hearings of the Panel are private and confidential to the Parties…. The Panel and the Parties shall use their best efforts to maintain the confidential nature of the arbitration proceedings and the Award…."). The confidentiality aspect allows parties to air their differences without scrutiny from industry competitors and promotes the unfettered exchange of views. Undoing the parties' and the arbitration panel's agreement to keep the Final Award confidential by not sealing it would undermine the arbitration process in the reinsurance industry. Thus, preserving confidentiality under these circumstances is a sound objective. *See, e.g., Century Indem. Co. v. Certain Underwriters at Lloyds,* 592 F. Supp. 2d 825, 828 (E.D. Pa. 2009) (granting a motion to seal a reinsurance arbitration award subject to the same Confidentiality Agreement at issue here, on

3

account of the privacy interest of the parties and minimal public interest in the award itself, the Court noted "the purpose behind sealing the Award is legitimate. The parties entered into a Confidentiality Agreement and it is the practice in the reinsurance industry to keep arbitration proceedings, including final awards, confidential"). *See also Century Indem. Co. v. Global Reins. Corp. of Am., U.S. Branch*, No. 15 Civ. 6426 (LTS) (S.D.N.Y.) (sealing of final award in reinsurance arbitration and portions of the Petition to Confirm Award by Judge Failla by Order dated August 14, 2015 and maintained by Judge Swain by Order dated December 10, 2015 "in light of the confidentiality provisions of the arbitration agreement and consent to confirmation of the award").

In addition, the Final Award was confirmed pursuant to Section 9 of the Federal Arbitration Act (the "FAA"). Under the FAA, a reviewing court "must grant such an order [to confirm] unless the award is vacated, modified, or corrected" pursuant to specific grounds. 9 U.S.C. § 9. Here, TIG did not oppose confirmation of the Final Award, and has already satisfied its payment obligations pursuant to it. Thus, there was no actual dispute regarding the uncontested Petition to Confirm before the Court, and the Court's confirmation was a ministerial act. *See Dallas MTA, LP v. Celltex Cellular*, No. 06 Civ. 15412 (RLC), 2010 U.S. Dist. LEXIS 23187, *3 (S.D.N.Y. Mar. 10, 2010); *Sevenson Envtl. Serv. Inc. v. Sapp Battery Site Group*, No. 04 Civ. 0670 (JFK), 2004 U.S. Dist. LEXIS 7573, *5 (S.D.N.Y. Apr 29, 2004). Given that the substance of the Final Award, i.e., its contents, was not subject to judicial review nor was it relied on by the Court in confirming it, this case does not implicate the public's right to access to documents underpinning adjudications of substantive rights. *Lugosch*, 435 F.3d at 119-20; *see also Century v. Global*, supra (noting consent to confirmation); *Nationwide Mut. Ins. Co. v. Continental Cas. Co.*, slip op., No. 14C844 (N.D. Ill., June 3, 2014) (attached hereto as Exhibit 2). The *Nationwide* court analyzed why, in circumstances like we have here, sealing is appropriate:

> What is peculiar about this case is that there is no dispute over petitioners' entitlement to the relief they seek … No one opposes confirmation. Under these circumstances, confirmation of the award does not require me to consider, analyze, or adjudicate any of the parties' underlying rights or obligations. . . . All that matters at this juncture is that the award is unchallenged and has been fully satisfied. Indeed, this action is 'federal litigation' in name only; the petition does not articulate any substantive dispute. . . . [B]ecause resolution of these proceedings is not informed or influenced by the substance of the arbitration order, much less by any information the parties were obliged by agreement to keep confidential, no public interest is compromised by omission of that information from the public record.

*Id.* at 2-3.

In short, continuing to seal the Final Award will fulfill the expectation of confidentiality agreed upon by the parties and the arbitration panel, as reflected in the Confidentiality Agreement. The importance of fulfilling this expectation outweighs the public interest in the Final Award, which is essentially non-existent. This is even more so here, where there was no dispute as to confirmation of the Final Award. Because of the restrictions in the Confidentiality Agreement which are standard in the reinsurance industry, and the fact that the Final Award has

4

already been confirmed, the parties respectfully request that the confidentiality of the Final Award be maintained pursuant to Judge Stein's Order.

Respectfully submitted,

*Jeanne M. Kohler*

Jeanne M. Kohler

cc: Jay Shapiro, counsel for Petitioner
 Daryn Rush, counsel for Petitioner

# Exhibit 1

ARIAS•U.S. SAMPLE FORM 3.3: CONFIDENTIALITY AGREEMENT

In the Matter of the Arbitration Between

_____
                        Petitioner,
        - and -


_____
                        Respondent.:
                CONFIDENTIALITY AGREEMENT

1. The parties intending to be bound by this agreement are:

   a. The _____ and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

   b. The _____ and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, _____ and _____ agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made:  (a)  to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Agreement and an instruction to any recipient to maintain the confidentiality of all Arbitration Information.   In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed.  If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other(s) as soon as possible after the subpoena, discovery request or court order is received.  In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as

needed or appropriate to the following persons only:

    a. the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

    b. counsel for a party or employees of counsel's law firm who are assisting counsel;

    c. employees and agents of the parties for purposes consistent with this agreement;

    d. any party's deposition or trial witness;

    e. any person retained by counsel for a party to assist in this arbitration; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

    f. any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5. If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other party(ies) in writing as soon as possible after the subpoena, request or court order is received, to permit the other party(ies) to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other party(ies), the obligated party will cooperate (at the expense of the requesting other party(ies)) in the defense of a demand.

6. The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

Members of the Panel:

Arbitrator: _____

Arbitrator: _____

Umpire: _____

AGREED:

Arbitrator: _____

Arbitrator: _____

Umpire: _____

AGREED:

_____ for _____ Petitioner

_____ for _____ Respondent

Dated: _____

EXHIBIT A
In the Matter of the Arbitration Between

_____
                               Petitioner
      - and -

_____

Respondent.

## AFFIDAVIT

_____, being duly sworn, deposes and says:

1. I live at _____

2. I am employed as (position) by (name and address of employer),
_____
_____

3. I am aware that the parties to In the Matter of the Arbitration Between
_____
and _____
have entered into a Confidentiality Agreement dated
_____
I have received and read a copy of that Confidentiality Agreement.

4. I agree to review or otherwise use the material produced in the instant arbitration by _____
_____
only under supervision of a party's counsel and only in connection with this particular arbitration.

5. I agree that I am bound by the terms of the Confidentiality Agreement as though I were a party to the arbitration, and I will not disclose or discuss material produced by _____
_____
or _____
to or with any person other than those permitted access to such material under the Confidentiality Agreement.

(Signature)_____
Sworn to before me this \_\_\_\_\_ day of _____, 20\_\_\_ .

_____
Notary Public (SEAL)

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Nationwide Mutual Insurance Company and National Casualty Insurance Company, | ) ) ) ) | |
| Petitioners, | ) ) ) ) | |
| v. | ) ) | No. 14 C 844 |
| Continental Casualty Company and American Casualty Company. | ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER

The parties to this action agree that the relief petitioners seek—confirmation of a final arbitration order—is appropriate. Nevertheless, two pending motions seek resolution of the collateral issue of whether that order should be sealed, in whole or in part, or instead filed in the public record. Ordinarily, of course, documents filed in federal litigation are presumptively public. *See*, *e.g.*, *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419-20 (7th Cir. 2014); *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002). And because "the interest in allowing public access to the judicial record is [] a social interest rather than a concern solely of the

litigants," the parties' agreement to keep information confidential does not, in the usual case, justify keeping documents "that influence or underpin the judicial decision" out of the public eye. *Baxter*, 297 F.3d at 545.

What is peculiar about this case is that there is no dispute over petitioners' entitlement to the relief they seek in this action. The parties agree that the final arbitration order settles their underlying disputes and that the arbitration award has been fully satisfied. No one opposes confirmation. Under these circumstances, confirmation of the award order does not require me to consider, analyze, or adjudicate any of the parties' underlying rights or obligations. Indeed, neither side has suggested that I must even review the order before confirming it. In short, the substance of the arbitration order does not "influence or underpin the judicial decision" to confirm it. All that matters at this juncture is that the award is unchallenged and has been fully satisfied. Indeed, this action is "federal litigation" in name only; the petition does not articulate any substantive dispute.

In *Baxter*, the Seventh Circuit explained that there is "a sure path to dispute resolution with complete confidentiality: accept the results of the closed arbitration." 297 F.3d at 548. *See also Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (observing, "[p]eople who want secrecy

should opt for arbitration.") Certainly the public is entitled to know that this federal action exists, who the parties are, and the nature of the proceedings here. But because resolution of these proceedings is not informed or influenced by the substance of the arbitration order, much less by any information the parties were obliged by agreement and arbitral order to keep confidential, no public interest is compromised by omission of that information from the public record.

For these reasons, I conclude that the presumption in favor of the public filing of "documents that affect the disposition of federal litigation" is not triggered, and that the competing interests that inform the Seventh Circuit's standard are best satisfied by allowing petitioners to file a redacted version of the final arbitration order that omits paragraphs 3 and 4.

ENTER ORDER:

*Elaine E. Bucklo*
Elaine E. Bucklo
United States District Judge

Dated: June 3, 2014